**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
**DAN EIGO,**

                        **Plaintiff,**                          **OPINION & ORDER**
                                                                         **24-CV-7028 (NG)(LGD)**

    **-against-**

**SS&C TECHNOLOGIES, INC.,**

                        **Defendant.**
------------------------------------------------------------x
**GERSHON, United States District Judge:**

      Plaintiff Dan Eigo, a New York citizen, commenced this employment discrimination action against his former employer, defendant SS&C Technologies, Inc. ("SS&C"), in a New York state court. Within 30 days after it agreed to accept service of process, defendant, a Delaware corporation, removed the action to this court, alleging diversity jurisdiction. Although it is undisputed that defendant is headquartered in Connecticut and although plaintiff's complaint explicitly alleges that defendant failed to pay him approximately $258,000 in earned commissions, plaintiff now moves to remand the case to state court. Plaintiff argues, among other things, that defendant never established that the amount in controversy exceeded $75,000, that defendant should have issued a supplemental demand pursuant to N.Y. C.P.L.R. § 3017(c) before removing the action, that removal of this action was premature, and that defendant's principal place of business is in New York. For the reasons set forth below, plaintiff's motion is denied.

## BACKGROUND

      On September 3, 2024, plaintiff commenced this action by filing a summons and complaint in the Supreme Court of the State of New York, Nassau County. The following facts are drawn from that complaint.

1

On or about May 16, 2022, plaintiff was hired by SS&C as an Enterprise Sales Director. SS&C is a multinational company headquartered in Windsor, Connecticut, that sells software and services to the financial services industry. As an Enterprise Sales Director, plaintiff was paid commissions, the amount of which depended, in part, on his achievement of sales goals. Attainment of the goals was calculated at the end of the calendar year, and the earned commissions were paid 30 days thereafter.

In June 2023, plaintiff, who had suffered from chronic back pain for years, scheduled back surgery for August 15, 2023. In July 2023, plaintiff's wife was diagnosed with cancer. Later that month, plaintiff told his supervisor, Karen Dunn, about his wife's diagnosis, his back condition, and his upcoming surgery and asked to meet with her "to discuss work priorities, his personal and family health issues and finding a workable solution to both." (Complaint, ¶ 22)

Following that meeting, Dunn instituted various changes to plaintiff's work requirements that increased, rather than decreased, plaintiff's workload. After plaintiff underwent spinal surgery in August 2023, Dunn was "unhappy" about plaintiff's inability to travel (*id.*, ¶ 41) and "appeared frustrated with him when he gave her specifics about needing time off" (*id.*, ¶ 43). Dunn also "began to minimize Mr. Eigo's sales accomplishments" by failing to mention them at group meetings (*id.*, ¶ 44), and to demand more of him as compared to his peers. Although plaintiff was meeting his "very large renewal quota" and had "closed approximately twenty million dollars … in total contract value" in the previous 12 months (*id.*, ¶¶ 50–51), Dunn fired him on December 1, 2023, and claimed the termination was "performance based" (*id.*, ¶ 47).

Plaintiff's complaint alleges four claims: 1) disability discrimination in violation of New York State Human Rights Law, N.Y. Exec. L. § 296; 2) breach of contract; 3) failure to pay earned wages in violation of New York Labor Law §§ 190 *et seq.*; and 4) breach of the implied covenant

2

of good faith and fair dealing. The *ad damnum* clause does not request a specific amount of money; as to each claim, it requests "lost wages and benefits, compensatory and punitive damages—all in amounts to be determined at trial." (Complaint, p. 13) However, in the breach of contract claim, the complaint specifically alleges that defendant was "obliged to pay him approximately $258,000.00" by January 31, 2024, but failed to do so. (*Id.*, ¶¶ 76–78)

On September 5, 2024, defendant stipulated to accept service of plaintiff's complaint. On October 4, 2024, defendant filed a notice of removal in this district, alleging diversity jurisdiction. That document acknowledges that "Plaintiff does not expressly plead a specific amount of damages in the Complaint." (Notice of Removal, ¶ 9) But it asserts that there is a reasonable probability that the amount in controversy, exclusive of interest and costs, is in excess of $75,000 because "one element of Plaintiff's damages includes his alleged improperly withheld commissions, which Plaintiff estimates to be $258,000." (*Id.*, ¶ 10). In addition, the Notice of Removal asserts, upon information and belief, that plaintiff is a New York citizen and alleges that SS&C, as a Delaware corporation headquartered in Connecticut, is a citizen of both Delaware and Connecticut. (*Id.*, ¶¶ 4, 6–7)

Plaintiff now moves to remand this matter to state court, principally arguing that defendant has not established diversity jurisdiction. First, plaintiff argues that defendant has not established that the amount in controversy exceeds $75,000. Plaintiff asserts that, in the absence of a specific dollar demand in the complaint's *ad damnum* clause, plaintiff was required to request a supplemental demand pursuant to N.Y. C.P.L.R. § 3017(c) before removing the action. Plaintiff argues that removal of this action before receipt of the supplemental demand, or some other paper that explicitly specifies the amount of monetary damages sought, is premature.

3

Plaintiff also argues that the parties are not diverse because defendant, like plaintiff, is a citizen of New York. Although plaintiff acknowledges that "SS&C … is headquartered in Windsor, Connecticut" (Plaintiff's Memorandum of Law in Support of Motion to Remand ("Plaintiff's Memo") at 8), plaintiff asserts that defendant's principal place of business is in New York. Plaintiff further argues that, because defendant is a New York citizen, removal is barred by the "forum defendant rule."

In addition to challenging diversity jurisdiction, plaintiff raises two other issues. First, plaintiff alleges that defendant is engaging in "forum shopping" by removing this action. Noting that defendant has filed a premotion conference request that seeks permission to move to dismiss this action for failure to state a claim, plaintiff suggests that defendant removed this action because the plausibility standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), is more exacting than the state court's notice pleading requirements. Second, plaintiff argues that, because defendant engaged in forum shopping and lacks an objectively reasonable basis for seeking removal, this court should award attorney's fees pursuant to 28 U.S.C. §1447(c).

DISCUSSION

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Since district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States …," 28 U.S.C. § 1332(a), section 1441 "permits removal on the basis of … diversity of citizenship." *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 704 (2d Cir. 2019).

4

Where the only basis for federal subject matter jurisdiction is diversity of citizenship, the forum defendant rule provides that the action "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. §1441(b)(2).

In addition, "[w]hen removal is based on diversity of citizenship, an amount-in-controversy requirement must be met." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83–84 (2014). "If the plaintiff's complaint, filed in state court, demands monetary relief of a stated sum, that sum, if asserted in good faith, is 'deemed to be the amount in controversy.'" *Id.* at 84 (quoting 28 U.S.C. § 1446(c)(2)). "When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Id.* (citing 28 U.S.C. § 1446(c)(2)(A)). The notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89.

In this case, plaintiff's complaint does not demand a specific amount of money. With respect to each of the four claims, the *ad damnum* clause demands only "lost wages and benefits, compensatory and punitive damages—all in amounts to be determined at trial." (Complaint, p. 13) But allegations elsewhere in the complaint make it clear that plaintiff is seeking payment of "earned commissions" of approximately $258,000, as well as other damages. (*See id.*, ¶¶ 77–78) Based on these allegations, the Notice of Removal plausibly alleges that "there is a reasonable probability that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs …." (Notice of Removal, ¶10)

Plaintiff does not contest defendant's amount-in-controversy allegation, but essentially substantiates it. Plaintiff's Memo states: "It is Plaintiff's contention that he earned commissions for his performance in 2023." (Plaintiff's Memo at 2) Plaintiff's Memo further states that these

5

commissions were scheduled to be paid at the end of January 2024; that plaintiff was fired on December 1, 2023; and that his termination letter implied that he was not eligible for this "incentive compensation" because he was not "an active employee of SS&C and in good standing" on the date the incentives are paid. (*Id.*) Although Plaintiff's Memo does not mention the precise amount of the commissions, the complaint itself alleges that they were "approximately $258,000." (Complaint, ¶ 77)

Plaintiff's argument that defendant "should have employed the procedure set forth under New York C.P.L.R. § 3017(c) to demand that the Plaintiff set forth the 'total damages' he seeks" (Plaintiff's Memo, p. 6) is without merit. By its terms, § 3017(c) relates only to personal injury or wrongful death actions. It prohibits pleadings bringing such actions from "stat[ing] the amount of damages to which the pleader deems himself entitled" and provides that "a party against whom an action to recover damages for personal injuries or wrongful death is brought … may … request a supplemental demand setting forth the total damages …." Plaintiff has not cited any authority suggesting that parties in actions other than those for personal injury and wrongful death are authorized, much less required, to follow the procedures set forth in § 3017(c).

Plaintiff's third argument—that defendant's Notice of Removal is premature—is also without merit. Generally, a notice of removal must be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). However, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.*, § 1446(b)(3).

6

The 30-day periods referenced in §§ 1446(b)(1) and 1446(b)(3) do not start to run "until the plaintiff serves the defendant with a paper that explicitly specifies the amount of monetary damages sought." *Moltner v. Starbucks Coffee Co.*, 624 F.3d 34, 38 (2d Cir. 2010). "[A] defendant is not required to consider material outside of the complaint or other applicable documents for facts giving rise to removability." *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 145 (2d Cir. 2014). However, a defendant "must still apply a reasonable amount of intelligence in ascertaining removability," *id.* at 143 (internal quotation marks and citation omitted), and is permitted to remove before the 30-day period begins if there is a reasonable basis for alleging removal jurisdiction. *See id.* at 147.

In this case, the complaint alleges sufficient information for the defendant to ascertain that the dollar amount in controversy exceeds $75,000. Plaintiff's breach of contract claim alleges that defendant was obliged to pay plaintiff approximately $258,000 in earned commissions but failed to do so. A reader applying a reasonable amount of intelligence could deduce that plaintiff was demanding well over $75,000 and that there was a reasonable basis for removing this case. Accordingly, defendant's removal of this case was not premature.

Plaintiff's fourth argument is that the parties are not diverse because SS&C, like plaintiff, is a citizen of New York. It is undisputed that SS&C is a corporation and, as such, is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). It is also undisputed that SS&C is not incorporated in New York. Plaintiff's own motion includes evidence that the New York Department of State's Division of Corporations lists SS&C as a "foreign business corporation" incorporated in Delaware.

7

The only issue in dispute, then, is the location of SS&C's "principal place of business." That term is not statutorily defined, but the Supreme Court has held that it is "the place where a corporation's officers direct, control, and coordinate the corporation's activities"—that is, "the corporation's 'nerve center.'"  *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).  The Supreme Court stated that "in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)."  *Id.* at 93.  The parties agree that this is the test for determining SS&C's principal place of business.

In enunciating this nerve center test, *Hertz* expressly rejected the "more general business activities test" that had been employed by lower courts.  *Id.*  The Supreme Court noted that use of the business activities test had "led some courts … to look, not at a particular place within a State, but incorrectly at the State itself, measuring the total amount of business activities that the corporation conducts there and determining whether they are 'significantly larger' than in the next-ranking State."  *Id.*  The Court also described the practical difficulties of applying this test, stating:

> [A] corporation's general business activities more often lack a single principal place where they take place. That is to say, the corporation may have several plants, many sales locations, and employees located in many different places. If so, it will not be as easy to determine which of these different business locales is the "principal" or most important "place."

*Id.* at 95.

The burden of establishing diversity jurisdiction is on the party asserting it.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  In an effort to meet its burden, defendant has submitted a declaration from Alicia R. Neville, a Senior Paralegal employed by

8

SS&C, who has access to SS&C's corporate records and personal knowledge of the corporation's formation, history, worldwide offices, employees, and general business model. The Neville Declaration states that SS&C's "major corporate functions including its centralized record-keeping, accounting, finance, and human resources are managed and/or directed in Windsor, Connecticut." (Neville Decl., ¶ 12) The declaration further states that, although the corporation now has 100 locations in 35 countries, with approximately 27,000 associates worldwide, strategic decision-making takes place at the Connecticut headquarters. (*Id.*, ¶¶ 7, 13).

In opposition, plaintiff has submitted his own declaration, which is based on his personal knowledge of defendant's business, gleaned during his tenure at one of SS&C's locations in New York. The Eigo Declaration focuses largely on SS&C business activities. It states that SS&C sells software to the financial services industry (Eigo Decl., ¶ 2); that this industry is SS&C's "primary customer base" (*id.*, ¶ 4); that SS&C's "principal place of sales operations" and two of its largest divisions are in New York (*id.*, ¶¶ 2, 4); and that SS&C employs 300 people in New York (*id.*, ¶ 3). The declaration also states that plaintiff was among those employees and asserts, upon information and belief, that "operational decisions regarding [his] employment were made in New York." (*Id.*, ¶¶ 2, 6)

Even assuming that all these statements in the Eigo Declaration are correct, this evidence is irrelevant to the determination of SS&C's principal place of business. Plaintiff is focusing on the locus of defendant's business activities, not on the locus of the corporation's decision-making and control. As the Supreme Court noted in rejecting the general business activities test, "if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York." *Hertz*, 559 U.S. at 96. Thus, even if plaintiff were correct in arguing that the bulk of

9

SS&C's business was generated in New York, this evidence would not establish that New York is SS&C's principal place of business.

The only portion of the Eigo Declaration that is possibly germane to the principal-place-of-business inquiry is the statement that a "considerable number of SS&C's officers and directors are located in New York." (Eigo Decl., ¶ 5) However, this statement does not establish that those officers and directors meet in New York or that New York is defendant's nerve center. Plaintiff has introduced nothing to counter defendant's evidence that the direction, control, and coordination of SS&C's worldwide operations takes place at its Connecticut headquarters. In light of the overwhelming evidence that SS&C's principal place of business is in Windsor, Connecticut, I find that defendant has established complete diversity of citizenship. Since defendant is not a citizen of New York, the forum defendant rule is inapplicable to this case.

Plaintiff next seeks to remand this case on the ground that defendant is engaged in "forum shopping." Indeed, "every time a party removes a case from state to federal court, there is some aspect of forum shopping at play." *AF Trucking Inc. v. Bus. Fin. Servs., Inc.*, 2020 WL 2765678, at *4 (S.D.N.Y. May 28, 2020). The cases plaintiff cites in support of his argument—two Second Circuit appeals from district court orders dismissing cases on the ground of *forum non conveniens*—are inapposite. They do not provide a basis for evaluating a defendant's intentions and remanding a case which a defendant has properly removed.

Finally, plaintiff argues that the court should award attorney's fees incurred in bringing this motion. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). But there is no basis for such an award where, as here, remand is not warranted. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

## CONCLUSION

For the reasons set forth above, plaintiff's motion to remand this action to state court is denied in its entirety. Magistrate Judge Dunst is respectfully directed to lift the stay on discovery and to schedule an initial conference. Plaintiff is directed to respond to defendant's premotion conference request within seven (7) days of the filing of this Opinion and Order.

**SO ORDERED.**

_____/S/_____
**NINA GERSHON**
**United States District Judge**

July 24, 2025
Brooklyn, New York